IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Walker, TRUESDELL, ROTH & ASSOCIATES, as Trustee for and on behalf of the Extended Stay Litigation Trust,<br><br>HOBART TRUESDELL, as Trustee for and on behalf of the Extended Stay Litigation Trust, and<br><br>THE EXTENDED STAY LITIGATION TRUST,<br><br>      Plaintiffs,<br>vs.<br><br>THE BLACKSTONE GROUP, L.P., *et al.*<br><br>      Defendants. | Case No.  11-cv-4549 (SAS) |

**BLACKSTONE DEFENDANTS' MEMORANDUM ON
THE REFERRAL OF THIS CASE TO THE BANKRUPTCY COURT**

      The Standing Order of the Southern District of New York provides that any case "arising in or related to a case under title 11" is to be "referred to the bankruptcy judges for this district." This case arises in the title 11 Extended Stay bankruptcy case pending in the United States Bankruptcy Court for the Southern District of New York before Bankruptcy Judge James M. Peck: Bankruptcy Judge Peck created the plaintiff Extended Stay Litigation Trust, and the Bankruptcy Court retained exclusive jurisdiction to hear the claims brought by the Trust in this case. Referral to the Bankruptcy Court, therefore, is to be "immediate and automatic." *Alliance Commc'n Grp., Inc. v. N. Telecom, Inc.*, 65 B.R. 581, 585 (S.D.N.Y. 1986) (citing the Standing Order).

      The same day that the Extended Stay Litigation Trustee brought this case it filed an identical complaint in the Extended Stay Bankruptcy Court that makes the *same* factual allegations and brings the *same* claims against the *same* defendants as in this case. (*See In re*

*Extended Stay Inc.*, Case No. 09-13764 (JMP), Dkt. No. 1444, Adv. Case No. 11-02254 ("Bankruptcy Court Fiduciary Duty Action"), Compl. (Ex. 1).)  Of the 564 paragraphs in the complaint in this case, 562 are ***word-for-word identical*** to the complaint in the Bankruptcy Court Fiduciary Duty Action.  (*See* Comparison (Ex. 2).)  The only two paragraphs that differ at all concern jurisdiction and venue.  In those two paragraphs in the Bankruptcy Court Fiduciary Duty Action, the Litigation Trustee concedes that the claims "aris[e] in or relate[] to the [Extended Stay] Chapter 11 Cases pending in the United States Bankruptcy Court for the Southern District of New York" and that the case "constitutes a 'core' proceeding as defined in 28 U.S.C. § 157(b)(2)(A)."  (Bankruptcy Court Fiduciary Duty Action, Compl. (Ex. 1) ¶ 144.)

Because this case is identical to the Bankruptcy Court Fiduciary Duty Action (other than the two paragraphs concerning jurisdiction and venue), the Litigation Trustee has conceded that this case, too, is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), and that the claims brought in this case arise in or relate to the Extended Stay bankruptcy.  It strains the bounds of good-faith advocacy for the Litigation Trustee to argue that this case – with the *same* factual allegations, the *same* claims, and the *same* defendants as in the Bankruptcy Court Fiduciary Duty Action – does not arise in or relate to the Extended Stay bankruptcy.

Separate from this case and the Bankruptcy Court Fiduciary Duty Action, the Litigation Trustee also filed three additional complaints in the Extended Stay Bankruptcy Court.  One of those brings fraudulent transfer and other claims against certain Blackstone Defendants based on factual allegations that are virtually identical to the allegations in this case and the Bankruptcy Court Fiduciary Duty Action.[1]  (*See In re Extended Stay, Inc.*, Case No. 09-13764 (JMP), Dkt.

---

[1]  The "Blackstone Defendants" are The Blackstone Group, L.P., Blackstone Holdings I L.P., Blackstone Holdings II L.P., Blackstone Holdings III L.P., Blackstone Holdings IV L.P., Blackstone Holdings V L.P., Blackstone Holdings I/II GP, Inc., Blackstone Holdings III GP L.L.C., Blackstone Holdings IV GP L.P., Blackstone Holdings V GP L.P., Blackstone Real Estate Partners IV L.P., Blackstone Capital Partners IV L.P., BHAC IV, LLC,

No. 1445, Adv. Case No. 11-02255, Compl. (Ex. 3).) Indeed, all five cases – this case and the four before Bankruptcy Judge Peck – stem from the sale of Extended Stay in June 2007 and are based on the same fundamental allegation: that the transaction "left the Debtors insolvent, undercapitalized, and unable to pay their debts as they became due" and led to Extended Stay's bankruptcy. (*Truesdell, Roth & Assocs. v. The Blackstone Group, L.P.*, Case No. 11-4549, Compl. ¶ 2.) Even if this Court's Standing Order does not require referral to the Extended Stay Bankruptcy Court automatically, it would make no sense for Bankruptcy Judge Peck to preside over, and make rulings in, four actions – including the action identical to this one – while this Court keeps this case; referral is the only sensible and judicially efficient way to proceed.

## **BACKGROUND**

In June 2007, two Blackstone-controlled entities sold Extended Stay Hotels to an unrelated buyer. Two years after the transaction – in June 2009 – Extended Stay filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. (*See In re Extended Stay Inc.*, Case No. 09-13764 (JMP).) In July 2010, Bankruptcy Judge James M. Peck approved the Extended Stay Plan of Reorganization, and in doing so created the Extended Stay Litigation Trust – the plaintiff here – to bring claims, if any, regarding the sale of Extended Stay in June 2007. (*See id.*, Dkt. No. 1157, Fifth Am. Plan ("Fifth Am. Plan") § 6.17(a).) Bankruptcy Judge Peck also expressly retained exclusive jurisdiction over any such claims that the Extended Stay Litigation Trust may bring. (*See id.*, §§ 12.2, 12.8.)

On June 14, 2011, the Litigation Trustee filed this complaint in the Supreme Court of New York bringing fiduciary duty and other claims against the Blackstone Defendants concerning the sale of Extended Stay. The crux of the Trustee's case is the allegation that the

---

BRE/HV Holdings LLC, Blackstone Hospitality Acquisitions, LLC, Prime Hospitality, LLC, Jonathan Gray, William Stein, Michael Chae, Robert Friedman, Gary Sumers, Dennis McDonagh, and Alan Miyasaki.

sale "left the Debtors insolvent, undercapitalized, and unable to pay their debts as they became due." (Compl. ¶ 2.) At the same time, the Litigation Trustee filed four additional complaints in the Bankruptcy Court concerning the same transaction. (*See In re Extended Stay Inc.*, Case No. 09-13764 (JMP), Dkt. Nos. 1444, 1445, 1446, 1448.)

In one of those complaints, the Litigation Trustee makes the exact same factual allegations and brings the exact same claims against the exact same defendants as in this case. (Bankruptcy Court Fiduciary Duty Action, Compl. (Ex. 1).) A comparison of the complaint in the Bankruptcy Court Fiduciary Duty Action with the complaint in this case reveals that only two paragraphs – of 564 – differ at all, and those concern jurisdiction and venue. (Comparison (Ex. 2).) In those two paragraphs, the Litigation Trustee acknowledges that the Bankruptcy Court Fiduciary Duty Action, which brings the same claims against the same defendants as this case, "constitutes a civil proceeding arising under Title 11 of the United States Code or arising in or related to the [Extended Stay] Chapter 11 Cases," and that the case "constitutes a 'core' proceeding as defined in 28 U.S.C. § 157(b)(2)(A)." (Bankruptcy Court Fiduciary Duty Action, Compl. (Ex. 1) ¶ 144.)

The other cases filed in the Extended Stay bankruptcy raise substantially similar factual allegations to this case and the Bankruptcy Court Fiduciary Duty Action. All stem from the same underlying premise: that the sale of Extended Stay in June 2007 left the company insolvent, undercapitalized, and unable to pay its debts, thereby forcing it into bankruptcy. And the Litigation Trustee concedes that those cases, too, constitute "core" proceedings. (*See In re Extended Stay, Inc.*, Case No. 09-13764 (JMP), Dkt. No. 1445, Adv. Case No. 11-02255, Compl. (Ex. 3) ¶¶ 10, 13; *id.*, Dkt. No. 1446, Adv. Case No. 11-02256, Compl. ¶¶ 11, 14; *id.*, Dkt. No. 1448, Adv. Case No. 11-02259, Compl. ¶¶ 12, 15.)

Against this backdrop, the Blackstone Defendants removed this case from the Supreme Court of New York on July 1, 2011 pursuant to 28 U.S.C. § 1452, and respectfully submit that, pursuant to 28 U.S.C. § 157(a) and the Standing Order of the Southern District of New York, the case must be referred to the Extended Stay Bankruptcy Court automatically.

## ARGUMENT

**I.     This Case Must Be Referred To The Extended Stay Bankruptcy Court Pursuant To 28 U.S.C. § 157(a) And This Court's Standing Order Regarding Referral.**

Section 157(a) specifies that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).  The United States District Court for the Southern District of New York has taken that step, requiring that all such cases be referred to the United States Bankruptcy Court for the Southern District of New York.  This Court's July 10, 1984 Standing Order makes clear that "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ***are referred*** to the bankruptcy judges for this district."  United States District Court for the Southern District of New York Order M10-450 (July 10, 1984) (J. Ward) (Ex. 4) (the "Standing Order") (emphasis added).  This case arises in, and at a minimum relates to, the Extended Stay bankruptcy case, and therefore should be referred to the Extended Stay Bankruptcy Court.

**A.     This Case Is a Core Proceeding Arising In the Extended Stay Bankruptcy.**

"Proceedings can be core by virtue of their nature if … the proceedings directly affect a core bankruptcy function." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999).  This case is a "core proceeding[] … arising in a case under title 11" because it directly concerns "the administration of the [Extended Stay bankruptcy] estate" for at least two reasons.  28 U.S.C. §§ 157(b)(1), (b)(2)(A).

5

*First*, the Extended Stay Bankruptcy Court approved a Plan of Reorganization that expressly created the Litigation Trust, and the Litigation Trustee, to pursue claims, if any, concerning the sale of Extended Stay in June 2007. (*See In re Extended Stay Inc.*, Case No. 09-13764 (JMP), Fifth Am. Plan § 6.17(a).) The Litigation Trustee would not exist but for the Extended Stay Bankruptcy Court. Its claims "were transferred to it by the [debtors] pursuant to the Plan and the Litigation Trust Agreement." *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 444 (S.D.N.Y. 2008); *see also In re Extended Stay Inc.*, Case No. 09-13764 (JMP), Dkt. No. 1138, Litigation Trust Agreement ("Litigation Trust Agreement") § 1.2(a). They are not "independent of the reorganization," *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002), but rather "arise under the Plan" and directly implicate its "execution," *In re Refco*, 628 F. Supp. 2d at 444 (quoting *In re General Media, Inc.*, 335 B.R. 66, 73, 75 (Bankr. S.D.N.Y. 2005)).

*Second*, the Bankruptcy Court expressly retained jurisdiction over the claims in this case. The Plan of Reorganization provides that "the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter … arising in or related to the Chapter 11 Cases or the Plan." (Fifth Am. Plan Art. XII.) The Plan of Reorganization further makes clear that the Bankruptcy Court retained "exclusive jurisdiction …. [t]o determine any and all adversary proceedings … that, pursuant to the Plan, may be instituted … after the Effective Date, including, without express or implied limitation, any claims to avoid any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of the Debtors' estates." (*Id.* § 12.2.) The Litigation Trust Agreement similarly provides that the Bankruptcy Court "shall retain exclusive jurisdiction to … decide any claims or disputes which may arise or result from, or be connected with, this Litigation Trust Agreement," including claims concerning the sale of Extended Stay in June 2007. (Litigation Trust Agreement § 12.4.)

Given these facts, it is no surprise that the Litigation Trustee has acknowledged that this case is a core proceeding that concerns the administration of the Extended Stay bankruptcy estate. The same day that it filed this case, the Litigation Trustee also filed the Bankruptcy Court Fiduciary Duty Action. The Bankruptcy Court Fiduciary Duty Action complaint is word-for-word identical to the complaint in this case (except for two paragraphs concerning jurisdiction and venue). (*See* Comparison (Ex. 2).) In the Bankruptcy Court Fiduciary Duty Action complaint, the Litigation Trustee concedes that these claims "aris[e] in or relate[] to the [Extended Stay] Chapter 11 Cases pending in the United States Bankruptcy Court for the Southern District of New York," and that this case "constitutes a 'core' proceeding as defined in 28 U.S.C. § 157(b)(2)(A)." (Bankruptcy Court Fiduciary Duty Action, Compl. (Ex. 1) ¶ 144.)

### B.   This Case Also Relates to the Extended Stay Bankruptcy Case.

Even if this case is not a "core proceeding" – and it is – nonetheless it is "related to" the Extended Stay Chapter 11 cases. The Second Circuit employs an "expansive test for 'related to' jurisdiction articulated by the Third Circuit in *In re Pacor*." *In re Refco*, 628 F. Supp. 2d at 437. "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Pacor*, 743 F.2d 984, 994 (3d Cir. 1984); *accord In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (adopting *Pacor's* "conceivable effect" test); *In re Refco*, 628 F. Supp. 2d at 437-38, 442-43 (applying *Pacor* and noting the "close nexus" to the bankruptcy).

The outcome of this case undoubtedly will have an effect on the Extended Stay bankruptcy estate. The very purpose of this case is to recover monies for the estate that would be distributed to beneficiaries of the Litigation Trust – which, by definition, hold claims in the

7

Extended Stay bankruptcy cases. (Fifth Am. Plan § 1.90; Litigation Trust Agreement § 3.4; *id.* Art. 6.) In other words, this case will impact distributions to the bankruptcy estate's creditors.

II. **This Court's Standing Order And Practice Require That This Case Be Referred To The Extended Stay Bankruptcy Court Automatically, And The Bankruptcy Court Can Decide Any Motion To Remand.**

The Standing Order of the Southern District of New York requires that this case be referred to the Bankruptcy Court automatically without regard for whether the Litigation Trustee moves to remand. Neither Section 157 nor the Standing Order conditions referral upon resolving any remand dispute. Indeed, as courts in this district have routinely noted, "[r]eferral to the bankruptcy court under 28 U.S.C. § 157(a) is immediate and automatic." *Alliance Commc'n Grp., Inc. v. N. Telecom, Inc.*, 65 B.R. 581, 585 (S.D.N.Y. 1986) (citing the Standing Order); *accord Picard v. HSBC Bank PLC*, 2011 WL 1544494, at *1 (S.D.N.Y. Apr. 25, 2011); *In re 2300 Xtra Wholesalers, Inc.*, 2011 WL 672353, at * 1 (S.D.N.Y. Feb. 4, 2011); *In re Boston Generating, LLC*, 2010 WL 428871, at *1 (S.D.N.Y. Nov. 1, 2010); *Merrill Lynch Mort. Capital Inc. v. Esmerian*, 2008 WL 2596369, at *1-2 (S.D.N.Y. June 30, 2008); *In re Verestar, Inc*, 2006 WL 763054, at *1-2 (S.D.N.Y. Mar. 23, 2006); *Delcon Const. Corp. v. Board of Educ. of City of Yonkers, New York*, 299 B.R. 60, 61 (S.D.N.Y. 2003); *Fed. Ins. Co. v. Sheldon,* 167 B.R. 15, 19 (S.D.N.Y. 1994); *Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.*, 132 B.R. 4, 6-8 (S.D.N.Y. 1991); *In re Ionosphere Clubs, Inc.*, 1991 WL 29066, at *1 (S.D.N.Y. Feb. 27, 1991).

Putting aside that referral under the Standing Order is automatic, the Extended Stay Bankruptcy Court is empowered to consider and resolve motions to remand cases to state courts. Courts in this district have found that the bankruptcy court "is empowered to consider plaintiff's motion to remand to state court, including its abstention arguments." *In re RJZM LLCI*, 2009 WL 1542703, at *1 (S.D.N.Y. June 2, 2009); *In re Fairfield Sentry Ltd.*, 2010 WL 4910119, at *4 (S.D.N.Y. Nov. 22, 2010) ("The Defendants … argue that it would be inefficient to have the

8

bankruptcy court decide the remand issue, which is then appealable (and will be appealed) to this Court. This Court disagrees. The bankruptcy court is empowered to consider the merits of any motions to remand to state court."). Federal Rule of Bankruptcy Procedure 9027, which governs removal to bankruptcy courts, enables bankruptcy courts to "render final decisions on whether to remand a removed case." *In re Adams*, 133 B.R. 191, 193 (Bankr. W.D. Mich. 1991).

The Extended Stay Bankruptcy Court is in the best position to determine any potential motion to remand this case. The Bankruptcy Court is intimately familiar with the Extended Stay bankruptcy proceedings, the Bankruptcy Court created the Litigation Trustee, and the Bankruptcy Court retained exclusive jurisdiction over any claims brought by the Litigation Trustee. This case is word-for-word identical to a complaint currently pending before the Bankruptcy Court, except for two paragraphs concerning jurisdiction and venue. Further, the Litigation Trustee filed other complaints in the Bankruptcy Court – all of which also concern the sale of Extended Stay in June 2007, and one of which brings separate claims against many of the same defendants in this case. In short, the Extended Stay Bankruptcy Court "is in the best position to determine, in the first instance, the manner in which this case can and should proceed." *In re Fairfield Sentry*, 2010 WL 4910119, at *4; *accord In re RJZM*, 2009 WL 1542703, at *1.

In fact, that is precisely what has already happened in the Extended Stay bankruptcy. Three wholly separate cases initially brought in the Supreme Court of New York in 2009 were removed to this Court and referred automatically to Bankruptcy Judge Peck. *See In re Extended Stay*, 435 B.R. 139, 143 (S.D.N.Y. 2010). Bankruptcy Judge Peck decided motions to remand all three cases, granting two of those motions and denying the other. *See In re Extended Stay, Inc.*, 418 B.R. 49, 52-53 (Bankr. S.D.N.Y. 2009). On appeal, Judge Swain affirmed Bankruptcy

9

Judge Peck's decision. *See In re Extended Stay*, 435 B.R. at 153.  There is no reason to depart from that commonly followed procedure in this case.

The Extended Stay Litigation Trustee's argument that this Court should decide any potential motion to remand is disingenuous.  **First**, that argument requires the Litigation Trustee to contradict its signed complaint in the Bankruptcy Court Fiduciary Duty Action, in which it concedes that the claims in this case arise in and relate to the Extended Stay bankruptcy.  **Second**, the Litigation Trustee owes its very existence to the Bankruptcy Court, and the Bankruptcy Court retained exclusive jurisdiction to hear the claims asserted in this case.  **Finally**, the Litigation Trustee's request is an improper attempt to end-run the requirements to withdraw the reference.  *See In re Ionosphere Clubs, Inc.*, 1991 WL 29066, at *1 (S.D.N.Y. Feb. 27, 1991) (holding that referral under Section 157 "in this District is automatic" and noting that a challenge to referral should be treated "as a motion to withdraw the reference").

In short, the Litigation Trustee's request should be rejected. This case arises in or relates to the Extended Stay bankruptcy, as the Litigation Trustee has already conceded.  As a result, 28 U.S.C. § 157 and this Court's Standing Order regarding referral require that this case be referred to the Extended Stay Bankruptcy Court automatically, and the Bankruptcy Court can then rule on any potential motion to remand.

## CONCLUSION

For the reasons set forth above, the Blackstone Defendants hereby request that this case be referred to the Bankruptcy Court.  A proposed order is attached as Exhibit 5.

Dated: July 11, 2011

New York, New York

Respectfully submitted,

*s/ Richard M. Cieri*
Richard M. Cieri
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, D.C.  20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*Counsel to the Blackstone Defendants*